IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 25, 2007

## CONNIE LEE ARNOLD v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Carter County**
**No. S15534    Robert E. Cupp, Judge**

_____

**No. E2006-00440-CCA-R3-PC    Filed August 3, 2007**

_____

The petitioner, Connie Lee Arnold, appeals the Carter County Criminal Court's denial of his petition for post-conviction relief from his convictions for child rape and especially aggravated sexual exploitation of a minor and resulting effective thirty-seven-year sentence. On appeal, he contends that (1) he received the ineffective assistance of trial counsel because his attorney failed to file a motion for change of venue based on pretrial publicity and (2) the post-conviction court judge erred by refusing to recuse himself from this case. Upon review of the record and the parties' briefs, we conclude that the petitioner did not receive the ineffective assistance of counsel and that the post-conviction court did not err by denying the petitioner's motion to recuse. Nevertheless, we hold that the judge who presided over this post-conviction proceeding is disqualified from any subsequent proceedings in this case.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JERRY L. SMITH and D. KELLY THOMAS, JR., JJ., joined.

C. Brad Sproles, Kingsport, Tennessee, for the appellant, Connie Lee Arnold.

Robert E. Cooper, Jr., Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; Anthony Wade Clark, District Attorney General; and Kenneth Baldwin, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

This case has an extensive procedural history. The record reflects that in November 1994, the petitioner was indicted in Johnson County for sexual crimes against his minor daughter. Subsequently, the case was transferred to Carter County for trial. In November 1995, a Carter County Criminal Court jury convicted the petitioner of rape of a child, a Class A felony, and

especially aggravated sexual exploitation of a minor, a Class B felony. On direct appeal, this court gave the following factual account of the crimes:

> Earnest Hendrix, a cab driver, testified that on October 23, 1994, he was driving the defendant from Knoxville to Kingsport. He said that the defendant showed him a photograph depicting oral sex. Mr. Hendrix said that the defendant told him that the penis in the photograph was his and the girl was his daughter. The state introduced a Polaroid photograph into evidence as exhibit two, and Mr. Hendrix identified it as the one displayed by the defendant. He testified that the defendant offered to have his daughter perform oral sex on him in lieu of the cab fare. Mr. Hendrix said that upon their arrival in Kingsport, he called the police.
>
> The victim testified that she was eleven years old in October 1994. She said that before Halloween, she was attending to her sick grandmother when her father, the defendant, came to the door and motioned her out of the room. She said the defendant grabbed her arm and took her to his bedroom. She said he put his camera on the dresser, pushed her head down, stuck his penis in her mouth, and told her to go up and down on it. She said that he reached over and pushed the button on the camera. She identified exhibit two as the photograph the defendant made that day. The jury found the defendant guilty of both counts.

State v. Connie L. Arnold, No. 03C01-9902-CR-00081, 2000 Tenn. Crim. App. LEXIS 20, at **2-3 (Knoxville, Jan. 11, 2000), perm. to appeal denied, (Tenn. 2000). On direct appeal, this court affirmed the petitioner's convictions. Id. at *13.

Subsequently, the petitioner filed a pro se petition for post-conviction relief. However, the post-conviction court dismissed the petition without appointing counsel or affording the petitioner an evidentiary hearing, concluding that the petition failed to state a colorable claim for relief. See Connie Lee Arnold v. State, No. E2001-02526-CCA-R3-PC, 2002 Tenn. Crim. App. LEXIS 970 (Knoxville, Nov. 13, 2002). Although a majority panel of this court affirmed the post-conviction court, our supreme court remanded the case for reconsideration in light of that court's recently released opinion of Burnett v. State, 92 S.W.3d 403 (Tenn. 2002). See Connie Lee Arnold v. State, No. E2001-02526-SC-R11-PC, 2003 Tenn. LEXIS 211 (Knoxville, Mar. 10, 2003). However, on remand, a majority of this court again affirmed the lower court's ruling, stating that "the petitioner presented only a bare and conclusory allegation as to a constitutional violation, and, as such, his claim was not colorable so as to avoid summary dismissal." Connie Lee Arnold v. State, No. E2003-00691-CCA-RM-PC, 2003 Tenn. Crim. App. LEXIS 353, at *16 (Knoxville, Apr. 15, 2003). Our supreme court granted the petitioner's Rule 11 application for permission to appeal and concluded that the petition stated a colorable claim for ineffective assistance of counsel based upon

trial counsel's failure to seek a change of venue due to pretrial publicity. Arnold v. State, 143 S.W.3d 784 (Tenn. 2004). The supreme court remanded the case to the post-conviction court for the appointment of counsel and an evidentiary hearing. Id. at 787.

On September 20, 2005, appointed counsel filed a motion titled "MOTION FOR A CHANGE OF VENUE." In the motion, the petitioner alleged as follows:

> Defendant/Petitioner feels that it would be impossible to obtain a fair and just hearing before this honorable Court because Defendant/Petitioner has, in the past, appealed several rulings of this Court which have resulted in reversal, and Defendant/Petitioner has filed a formal complaint against the Honorable Judge Robert E. Cupp with the Board of Professional Responsibility and/or the Judicial Board.

On October 12, 2005, counsel also filed an amended petition for post-conviction relief, alleging that the petitioner received the ineffective assistance of counsel because his trial attorney, among other things, failed to "take adequate measures to protect Petitioner from the damages caused by pretrial publicity of the case." On November 2, 2005, the post-conviction court concluded that the petitioner's motion for change of venue was actually a motion to recuse, and in a written order, the court denied the petitioner's motion, stating that "[t]his Court has no bias or prejudice against this Petitioner, and assures the Petitioner that he will get a fair hearing."

An evidentiary hearing on the petitioner's post-conviction petition was held on November 9, 2005. At the hearing, the post-conviction court heard the following testimony, pertinent to this appeal: The then fifty-six-year-old petitioner testified that in October 1994, he was arrested in Sullivan County and charged with crimes against the victim. However, those charges were later dismissed, and the petitioner was indicted in Johnson County for crimes against the victim. The petitioner stated that during jury selection for the petitioner's Johnson County trial, the trial court had to declare a mistrial and transferred the case to Carter County. The petitioner stated that information about his case was on the radio and in the newspapers "from Mountain City to Carter County." The petitioner did not know how many articles about his case appeared in newspapers, but the defense introduced into evidence two newspaper articles. The undated articles were titled "Man convicted in rape of 11-year-old daughter" and "Convict accuses lawyer, delays sentencing."[1] The petitioner stated that he did not have access to a radio while he was in jail and was awaiting trial but that his wife told him about the publicity his case was receiving. He stated that he believed the publicity influenced the public's impression of his case. On cross-examination, the petitioner acknowledged that potential jurors stated during voir dire that they did not know anything about this case.

---

[1]The post-conviction court noted on the record that the articles were published post-trial and appeared to come from the Johnson City Press newspaper.

The petitioner's trial attorney testified that he became licensed to practice law in Tennessee in 1978 and that a majority of his practice involved criminal defense. Counsel talked with the petitioner about the charges against him many times, and the petitioner was very interested in his case. Counsel stated that publicity "was not a problem in this case." He said that during jury voir dire in Johnson County, a potential juror gave a response to a question that resulted in the trial court declaring a mistrial. Counsel stated that the case was transferred to Carter County and that he did not remember having a problem selecting a jury due to publicity. On cross-examination, counsel testified that the petitioner asked him about media coverage in this case but did not seem particularly concerned about it.

Judge Lynn Brown testified that he presided over the petitioner's trial. Initially, the petitioner was to be tried in Johnson County. However, during jury selection in Johnson County, a potential juror's answer to a question revealed to the other potential jurors that the petitioner had a prior criminal history. After the potential juror's outburst, Judge Brown granted a motion for change of venue and moved the case to Carter County. He stated that he transferred the petitioner's case to Carter County because the petitioner could not get a fair jury in Johnson County. He said that pretrial publicity was not the reason for the transfer and that he decided to transfer the case because too many potential jurors in Johnson County knew the petitioner. Judge Brown stated that the petitioner had prior convictions for sexual crimes against children and that "Johnson County is just such a small community that [the petitioner] was rather notorious as a criminal."

On cross-examination, Judge Brown testified that The Tomahawk was the only general-circulation newspaper in Johnson County, that he had subscribed to the newspaper for about twenty years, and that the newspaper did not print arrests or criminal court proceedings. Judge Brown stated that there also was no pretrial publicity about the petitioner's case in the Elizabethton Star or the Johnson City Press but that he believed there was some newspaper coverage about the petitioner's trial. However, he said the Carter County newspapers did not know anything about the petitioner and were not interested in his case. Judge Brown acknowledged that he did not watch much television and could not comment on the amount of case publicity that appeared on television. He stated that a "number" of potential jurors in Johnson County knew the petitioner and had a negative opinion of him. During jury voir dire in Johnson County, Judge Brown asked the potential jurors if they had heard about the case from the media, and the jurors said no. However, they told Judge Brown that they "had heard about [the petitioner] from talk in the . . . tightknit mountain community."

Former assistant district attorney general Lisa Rice testified that she prosecuted the petitioner's case. She stated that she did not recall any pretrial publicity in the case and that she did not remember the media being present during the trial. She also did not remember any potential jurors making any comments about pretrial publicity.

In a written order, the post-conviction court ruled that the petitioner had failed to show that he received the ineffective assistance of counsel because his trial attorney failed to file a motion for change of venue due to pretrial publicity. The court noted that Judge Brown testified he moved the

-4-

petitioner's trial from Johnson County to Carter County due to the petitioner's reputation in Johnson County, not due to pretrial publicity. The court noted that Judge Brown, trial counsel, and Lisa Rice all testified that pretrial publicity was not a problem in this case. The post-conviction court denied the petition for post-conviction relief.

## II. Analysis

### A. Ineffective Assistance of Counsel

The petitioner contends that he received the ineffective assistance of counsel.[2] Specifically, he contends that because so many potential jurors in Johnson County had a negative opinion of him, his reputation in that community must have been affected by publicity. He also argues that because Johnson County and Carter County "are closely related and intermingled," the jurors in Carter County also must have been affected by pretrial publicity. The State contends that the post-conviction court property denied the petition for post-conviction relief. We agree with the State.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. Moreover,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697, 104 S. Ct. at 2069).

Initially, we note that the trial transcript has not been included in the appellate record. During the evidentiary hearing, the State and the petitioner requested that the trial transcript be made part

---

[2]We note that the petitioner's brief does not comply with Tennessee Rule of Appellate Procedure 27(a)(6). Pursuant to the rule, it is the petitioner's duty to include in his brief a statement of the facts relevant to the issues on appeal with appropriate record references. The statement of facts in the petitioner's brief contains no evidence presented at the evidentiary hearing.

of the record on appeal. The post-conviction court refused, stating

> Again, and [the Court of Criminal Appeals] may send it back and say, Cupp, you're wrong, but it would assume to me that . . . that is something that they Court of [Criminal] Appeals could take judicial notice of, and that's the facts of this case that's in their computers down there.

Once again, we must reiterate that this court may take judicial notice of the record from the petitioner's direct appeal. See State ex rel. Wilkerson v. Bomar, 376 S.W.2d 451, 453 (1964). Because such judicial notice is not required, the post-conviction court should have ordered that the trial transcript be made a part of the appellate record as the parties requested. However, given that the post-conviction court apparently did not consider the trial transcript when ruling that the petitioner was not entitled to post-conviction relief, we choose not to take judicial notice of the trial transcript from the petitioner's direct appeal.

That said, we hold that the post-conviction court properly concluded that the petitioner did not receive the ineffective assistance of counsel. As the post-conviction court noted, Judge Brown, trial counsel, and Lisa Rice testified that pretrial publicity was not a problem in this case. Although the petitioner argued that there was media coverage of his case "from Mountain City to Carter County," he stated that he learned about pretrial publicity from his wife and acknowledged that potential jurors stated they did not know anything about his case. The petitioner introduced into evidence only two newspaper articles about his case, and both of those articles appeared in newspapers after the jury convicted the petitioner. Given that the petitioner has presented no evidence of pretrial publicity in this case, trial counsel did not render deficient performance by failing to file a motion for change of venue.

### B. Motion to Recuse

Next, the petitioner contends that the post-conviction court judge committed reversible error by refusing to recuse himself from this case. He contends that the judge should have recused himself "due to Appellant's complaint to the Board of Judiciary against said judge" and because comments throughout the court's thirty-page opinion denying post-conviction relief demonstrate that the judge "held a predisposition to rule against the Appellant." The State contends that the petitioner has failed to show that the post-conviction court erred by refusing to grant the petitioner's motion to recuse because no unjust disposition of the case has occurred. We agree with the State. However, we conclude that the judge is disqualified from any subsequent proceedings involving this petitioner.

During the petitioner's evidentiary hearing, the post-conviction court was fair, patient, and courteous to the petitioner and all of the attorneys involved with the hearing. However, upon our review of the post-conviction court's order denying post-conviction relief, we must agree with the petitioner that much of the language in the order is, to say the least, troubling. In the order, the post-conviction court makes the following statements:

-6-

This matter is now before this court on Post-Conviction as a result of the petitioner convincing six of eight Appellate Judges that there was adverse publicity in this case and neither the attorney nor the trial judge did anything to protect him from this exploitive media coverage.[3]

. . . .

This Petition for Post Conviction relief is nine legal size pages. It can best be summarized by quoting from Judge Glenn's opinion, where a majority of the [Court of Criminal Appeals] agreed with this judge that the petitioner failed to present a colorable claim.

. . . .

Incredibly, [it] will hereafter be shown there was no media coverage. Be that as it may, the Supreme Court reversed and remanded for this court to proceed consistent with their opinion. This Court has now followed that directive.

. . . .

Apparently, the petitioner does not remember the cab driver testifying that it was a picture of his daughter that petitioner offered up for oral sex, in lieu of cab fare. Moreover, and really and truly unbelievable[,] his eleven year old daughter gets on the witness stand and looks at this picture that a jury has seen or will be seeing and testifies that its her father's penis in her mouth. Only, and I mean only Mr. Arnold would be capable of saying something like this.

. . . .

This court is concerned that over the last eleven (11) years that taxpayer after taxpayer dollar has been spent on frivolous proceedings by this petitioner. This court is amused and hopeful [that] the following will amuse the Appellate Judges[.] [I]t is from the

---

[3]Presumably, the six appellate judges to which the post-conviction court refers are the five justices of our supreme court, who ultimately remanded this case to the post-conviction court for the appointment of counsel, and Judge Joseph M. Tipton, who twice dissented when a panel of this court affirmed the post-conviction court's initial denial of post-conviction relief. However, the post-conviction court's statement is incorrect. The six judges simply concluded that the petitioner's petition stated a colorable claim for post-conviction relief that warranted the appointment of counsel and an evidentiary hearing. No judge on this court or the supreme court has ruled that there was adverse publicity in this case.

-7-

petitioner's complaint against this judge:

> There is no limit to how low[] Judge Cupp will go, just to get back at the Supreme Court Judge[s], in this case, even causing poor old hard working, taxpaying people, to pay out money, on and for lawyers, to sit around and do nothing, in a court case, [namely] mine. . . .
>
> This petitioner by his correspondence to this judge and everyone else thinks that he controls the Supreme Court of this state. We all know that this is not true, but it doesn't keep him from thinking it . . . .
>
> . . . .
>
> I know this opinion will result in two things, if nothing else. An appeal and a complaint to the Board of Judiciary. Be that as it may, this petitioner's Post-Conviction is without merit, and it is **ACCORDINGLY DISMISSED**. This court has reflected back on this matter and can reach no other conclusion as to how much attorney, court reporter, clerks, prosecutors and judges resources have been expended on this case. The taxpayer bill to this case would be simply incredible.
>
> This court would be remiss in its duty if at some point it did not send this order, along with everything else that has happened in this case to the original trial jurors so that they can see what has happened with this case over the last eleven (11) years. It is not my intent to do that until such time as this matter runs its course, if ever.
>
> Finally, this court has attached a copy of a Christmas card sent to this judge by the petitioner.[4] This makes me ill, not at getting the card, but at its content and the obvious purpose it was sent.

"A judge shall disqualify himself . . . in a proceeding in which the judge's impartiality might reasonably be questioned." Tenn. Sup. Ct. R. 10, Canon 3E(1). "[A] trial judge should grant a recusal whenever the judge has any doubts about his or her ability to preside impartially." Alley v. State, 882 S.W.2d 810, 820 (Tenn. Crim. App. 1994). However, recusal also is necessary "when a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality." Id. This objective standard

---

[4]The card is not in the appellate record.

"'takes into account that disqualification is required if there is an appearance of partiality to the reasonable observer, and it precludes a judge from avoiding recusal merely by avowing his or her impartiality.'" State v. Conway, 77 S.W.3d 213, 225 (Tenn. Crim. App. 2001) (quoting State v. Connors, 995 S.W.2d 146, 149 (Tenn. Crim. App. 1998)); see also State v. Mark A. Schiefelbein, Nos. M2005-00166-CCA-R3-CD, M2005-02370-CCA-R10-CO, 2007 Tenn. Crim. App. LEXIS 213, at **122-23 (Nashville, Feb. 14, 2007), perm. to appeal denied, (Tenn. 2007). "Adverse rulings by a trial court are not usually sufficient grounds to establish bias." Alley, 882 S.W.2d at 821. The "issue to be determined is not the propriety of the judicial conduct of the trial judge, but whether he committed an error which resulted in an unjust disposition of the case." State v. Hurley, 876 S.W.2d 57, 64 (Tenn. 1993); State v. Boggs, 932 S.W.2d 467, 472 (Tenn. Crim. App. 1996). A trial judge's refusal to grant a motion to recuse will be reviewed under an abuse of discretion standard. State v. Raspberry, 875 S.W.2d 678, 681 (Tenn. Crim. App. 1993).

We note that a trial judge is not required to recuse himself merely because a party has filed a formal complaint against the judge. See State v. Parton, 817 S.W.2d 28, 30 (Tenn. Crim. App. 1991). Moreover, we can understand the post-conviction judge's frustrations with the petitioner in this case. By the petitioner's own admission in his appellate brief, he has "consistently attacked the trial court, his attorneys, the prosecuting attorney, the police investigators, and the post-conviction court." Nevertheless, we cannot condone the inappropriate comments made about the petitioner or the disrespectful tone used toward any judge on this court or our supreme court. That said, we have carefully reviewed the record and have considered the petitioner's ineffective assistance of counsel claim. The petitioner has failed to present absolutely any evidence that he received the ineffective assistance of counsel in this case. Therefore, while many of the post-conviction court's comments in the order were egregious, we are unable to conclude that the petitioner suffered any prejudice or that the comments led to an unjust disposition of the case. Thus, we hold that the post-conviction court did not abuse its discretion by denying the petitioner's motion to recuse.

However, the post-conviction court's remarks certainly establish, from an objective standpoint, a reasonable basis for questioning the judge's impartiality in any future proceedings involving this petitioner. Therefore, the post-conviction court judge is disqualified from any subsequent proceedings in this case.

### III. Conclusion

Based upon the record and the parties's briefs, we affirm the judgments of the post-conviction court. Judge Cupp is disqualified from any subsequent proceedings in this case.

_____
NORMA McGEE OGLE, JUDGE