IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs November 7, 2006

## WILLIAM H. STITTS v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Madison County**
**No. C-04-365     Donald Allen, Judge**

**No. W2006-00176-CCA-R3-PC   -   Filed March 26, 2007**

Aggrieved of his robbery convictions, the petitioner, William H. Stitts, sought post-conviction relief, which was denied by the Circuit Court of Madison County after an evidentiary hearing. On appeal, the petitioner presses his claim that appellate counsel provided ineffective assistance by failing to ensure that a trial exhibit, a videotape of one of the robberies, was included in the appellate record on direct appeal. We affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3; Judgment of the Circuit Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JERRY L. SMITH and ROBERT W. WEDEMEYER, JJ., joined.

J. Colin Morris, Jackson, Tennessee, for the Appellant, William H. Stitts.

Robert E. Cooper, Jr., Attorney General & Reporter; Sophia S. Lee, Assistant Attorney General; James G. Woodall, District Attorney General; and Alfred Lynn Earls, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

A jury convicted the petitioner of two counts of robbery that occurred on the same day, December 16, 1998, in Jackson at two different convenience stores. Following conviction, the trial court sentenced the petitioner, as a Range II offender, to 10 years for each robbery conviction, to be served consecutively for an effective sentence of 20 years. The petitioner's convictions and sentence were affirmed on direct appeal. *State v. William Herbert Stitts*, No. W2002-01903-CCA-R3-CD (Tenn. Crim. App., Jackson, Feb. 24, 2004). The facts presented to the jury are summarized in the opinion on direct appeal:

> On the evening of December 16, 1998, Darlene Tosh was working as a clerk at Mike's Raceway, a convenience store located on

the corner of Airways and South Highland in Jackson.  At trial, Tosh testified,

> [I]t was just a normal evening by myself, and this gentleman walked in.  He was just walking around the store . . ., taking his time.  And all of a sudden he come [sic] up to my register and he had like a 50-cent [piece of] candy. . . .  When I went to open the register, he come [sic] over with his hand real fast and he started grabbing my money out of my register. . . . [I] tried to stop him.  And he jerked.  And when he jerked, he jerked all the money and then he took off running.

Tosh testified that when the man reached for the cash register, she thought, "Oh, no, not again."  Quickly, she grabbed the man's hand in an attempt to stop him, but the man "jerked real quick," taking more than one hundred dollars ($100) from the cash register drawer before running out of the store.  Tosh related that the man did not have a weapon, and she was not harmed during the robbery.  Nevertheless, the man did not have permission to take the money from the register.

After the man left, Tosh called the police, who arrived shortly thereafter.  The next day, Investigator Golden asked Tosh to view a photographic lineup, and she identified the appellant as the perpetrator of the offense.  Tosh identified the appellant at trial, both in person and in photographs produced from the video surveillance camera located in the store.  She explained that the photographs reflected her attempt to prevent the appellant from taking the money from the cash register.

On cross-examination, Tosh admitted that she recognized the appellant because he had previously been in the store.  She conceded that the appellant did not threaten her and she had not been afraid of the appellant.  In fact, she had initiated the physical contact by grabbing the appellant's hand.

That same evening, Francheska Davis was working at the Little General Store on the corner of Old Hickory and Hollywood in Jackson.  At trial, Davis testified that "[a] gentleman came into the store and shopped around for awhile and ended up getting just a 25-cent pack of gum.  And when I rang it up and opened the drawer,

he shoved me back into the wall and he just grabbed all the money." Davis testified that the man shoved her so hard that she fell. He then took the money from the drawer of the cash register and lifted the drawer to take the checks and larger bills kept underneath. However, because the larger bills had been put in the safe, the appellant "only got like $98.00 . . . [and] a lot of checks." After taking the money, the man ran out of the store and got into a car that was parked nearby.

After the man left, Davis alerted her manager, who was standing outside, and her manager notified the police. When the police arrived, Davis told them what had happened. Approximately two weeks later, Investigator Golden asked her to view a photographic lineup, and she identified the appellant as the individual who robbed the Little General Store. Davis identified the appellant at trial, both in person and in photographs produced from the video surveillance camera located in the store. Davis testified that she knew the appellant because they "grew up together." Nevertheless, she was frightened by the incident and did not attempt to stop the appellant. She stated that the appellant "acted like he had [a weapon], but . . . I didn't see one."

. . . .

J.R. Golden, an investigator with the Violent Crimes Unit of the Jackson Police Department, testified that on December 17, 1998, he was assigned to investigate the robberies of Mike's Raceway and the Little General Store and was "led to a suspect." Investigator Golden prepared a photographic lineup which he presented to Tosh and Davis individually. Both women identified the appellant as the man who robbed the respective convenience stores.

Investigator Golden subsequently viewed the videotapes obtained from the convenience stores by Sergeants Henson and Hardaway. From the recordings, Investigator Golden had still photographs produced, which photographs reflected the robberies in progress. At trial, Investigator Golden testified that the photographs accurately reflected "the still shots from the video[s]." The photographs and the videotapes were entered into evidence and viewed by the jury.

. . . .

-3-

Based upon the foregoing evidence, the appellant was convicted by the jury of two counts of robbery.

*Id*., slip op. at 1-4.

On August 30, 2004, the petitioner filed a timely pro se petition for post-conviction relief alleging ineffective assistance of trial and appellate counsel. After appointment of counsel, an amended petition was filed, and the post-conviction court conducted an evidentiary hearing on December 28, 2005. The petitioner testified and began by clarifying that his ineffective assistance of counsel claim related to appellate counsel and not to trial counsel. The petitioner said that trial counsel had "represented [him] to the fullest" and that he was "satisfied with her representation," which included filing a motion for new trial raising several issues.

The petitioner testified that, following the overruling of the motion for new trial, he wrote several letters to appellate counsel regarding the issues set forth in the new trial motion and other issues that he wanted pursued on appeal. Appellate counsel responded in writing and advised the petitioner that he "needed to leave the judicial system to him" and that "it had always been the attorney [who] made the decision." Appellate counsel pursued two issues on appeal: sufficiency of the evidence and excessiveness of the petitioner's sentence.

The petitioner's primary complaint with appellate counsel was counsel's failure to ensure that a videotape, which had been introduced at trial as an exhibit, was included in the record on appeal. The petitioner testified that the videotape showed a "black male" entering two different business establishments, reaching over the counter, grabbing money out of the register, and running out the door. The petitioner noted that in the opinion on direct appeal, the court stated, "[T]he trial court appeared to rely heavily on the videotape of the robbery," but "the videotape was not made part of the record of appeal." "The absence of an adequate record," the court wrote, "prevents appellate review of [the evidence sufficiency] issue." *See William Herbert Stitts*, slip op. at 6. In the petitioner's opinion, had appellate counsel presented the issues set forth in the new trial motion and the videotape, "the appeals court would have [seen] that it wasn't robbery."

On cross-examination, the State pointed out and the petitioner agreed that the jury had carefully reviewed the videotape at trial and found the petitioner guilty of both robberies[1] and that the trial judge had independently assessed the trial evidence and found it sufficient to support the convictions.

The only other evidence introduced by the petitioner was a written stipulation of evidence, signed by prosecution and post-conviction counsel, that recited the following:

---

[1] We discern from later comments by the court, the State, and post-conviction counsel that the videotape in question related only to the robbery of Darlene Tosh at Mike's Raceway.

That [appellate counsel], attorney at law, . . . handles the vast majority of appeals for the Public Defender's Office for the 26th Judicial District and that [appellate counsel] has handled numerous appeals over the last ten years. It is further stipulated that appella[te] counsel's testimony would be that physical evidence such as tapes are sometimes included in the appeal and sometimes they are not. Appellate counsel has no specific memory as to why he did not include the tape of the robbery in the direct appeal.

Notably, the videotape at issue was not produced at the post-conviction hearing or introduced as an exhibit to that hearing.

At the conclusion of the hearing, the post-conviction court summarized the evidence before it and analyzed the petitioner's complaint. The court ruled that appellate counsel's failure to include the videotape as part of the appellate record was not deficient performance, and it denied the petition for post-conviction relief. The court concluded by stating that the petitioner would be permitted to supplement the post-conviction record with the videotape, if it could be located, so the appellate court could review it. The following day, December 29, 2005, the post-conviction court entered a written order formally dismissing the petition for post-conviction relief.

The appellate record before us does not contain the videotape at issue, and our review of the record fails to disclose any filings or submissions by the petitioner explaining what, if any, efforts were made to locate the videotape.

On appeal, the petitioner merely restates his previous arguments, submits citations to legal authorities addressing ineffective assistance of counsel, and asserts without any analysis "that both prongs in *Strickland* have been met[,] and he has proven by clear and convincing evidence that [appellate counsel] was ineffective." We disagree and affirm the post-conviction court's ruling.

In post-conviction proceedings, the petitioner has the burden of proving by clear and convincing evidence the claims raised. T.C.A. § 40-30-110(f) (2006). On appeal, the lower court's findings of fact are reviewed de novo with a presumption of correctness that may only be overcome when the evidence preponderates against those findings. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

When a petitioner challenges the effective assistance of counsel in a post-conviction proceeding, he has the burden of establishing (1) deficient representation and (2) prejudice resulting from that deficiency. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 2064 (1984); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Deficient representation occurs when counsel provides assistance that falls below the range of competence demanded of attorneys in criminal cases. *Bankston v. State*, 815 S.W.2d 213, 215 (Tenn. Crim. App. 1991). Prejudice is the reasonable likelihood that, but for deficient representation, the outcome of the proceedings would have been different. *Overton v. State*, 874 S.W.2d 6, 11 (Tenn. 1994). Because a petitioner must establish both

deficient representation and prejudice therefrom, relief may be denied when proof of either is deficient. *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). If prejudice is absent, there is no need to examine allegations of deficient performance. *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069. On review, there is a strong presumption of satisfactory representation. *Barr v. State*, 910 S.W.2d 462, 464 (Tenn. Crim. App. 1995).

The foregoing standard that applies to a claim of ineffective assistance of trial counsel applies to a claim of ineffective assistance of appellate counsel. *See Porterfield v. State*, 897 S.W.2d 672, 678 (Tenn. 1995). The petitioner must show that counsel's performance was deficient and that the petitioner was prejudiced by this deficiency. *See Cooper v. State*, 849 S.W.2d 744, 746-47 (Tenn. 1993).

Applying these principles, we hold that the petitioner failed to establish in this post-conviction proceeding that he was prejudiced by his appellate counsel's failure to ensure that the record on appeal from the trial court contained an exhibit, a videotape of one of the robberies. The State correctly observes that the convicting jury viewed the videotape and that the trial court examined and relied on the videotape in denying the petitioner's trial motions for judgment of acquittal and new trial. The petitioner insists that the videotape proves, at the least, that he was guilty of theft, but not robbery, and that an appellate court viewing the videotape would agree with him. This argument, however, addresses the sufficiency of the convicting evidence, and an appellate court reviewing evidence sufficiency is not permitted to re-weigh or re-evaluate the evidence. A verdict of guilt by the trier of fact resolves all conflicts in the evidence in favor of the prosecution's theory. *See State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). "Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Evans*, 108 S.W.3d 231, 236 (Tenn. 2003). The videotape, it appears, could be interpreted in different ways, but by its verdict, the jury interpreted the videotape as supporting the petitioner's conviction of robbery of Darlene Tosh.

Moreover, we are left to speculate on the legal effect had an appellate court been able to review the videotape. The videotape is not before us, and we cannot review that which is not in the record. Accordingly, the petitioner has failed to carry his burden of showing how he was prejudiced in his direct appeal by the appellate court's inability to review the videotape.

As we have mentioned in our discussion of *Strickland*, we need not address whether counsel's performance was deficient when, as here, the post-conviction record before us fails to demonstrate prejudice. Because the post-conviction court held that counsel was not deficient, we simply comment about affirming that court on the different issue of prejudice not being shown. Counsel on direct appeal raised the issue of evidence sufficiency, but in that appeal, this court ruled that the sufficiency of the evidence could not be adjudicated due to the absence of the videotape in the appellate record, a lapse that fell at the feet of appellate counsel. *See William Herbert Stitts*, slip op. at 6. That development on direct appeal strongly suggests deficient performance of appellate counsel. Nevertheless, the post-conviction record before us in the present appeal evinces no basis for our saying that the petitioner was prejudiced by the performance of his counsel on direct appeal.

In conclusion and discerning no prejudice, we affirm the denial of post-conviction relief.

_____
JAMES CURWOOD WITT, JR., JUDGE